Connecticut Citizens Defense, et al., and Jason Thody, et al., and Rebecca Garcia. Good morning, Your Honors. May I... Just wait one second. We have the students clearing out. No problem, Your Honor. They're quick. All right. Mr. Atkinson, you reserve two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. May it please the Court, Cameron Atkinson for Connecticut Citizens Defense League, or L. Johnson, Ian Cordero, and Shaquanna Williams. I'm joined at counsel's table by Attorney Doug Dubitsky. Before I reach the main substance of my argument today, I just wanted to note briefly with respect to CCDL's associational standing, the Students for Fair Admissions case, and the effect of that is a sufficiently intervening decision for this Court to revisit the Guayo decision and bring this Court's standing jurisprudence back in line with Worth. We believe that Students for Fair Admissions sufficiently discussed the associational standing issue. It gave Students for Fair Admissions standing on an associational standing basis in that case. But it didn't involve a 1983 claim, right? That had, in both those companion cases, it was a Title VI and equal protection cause. My understanding was the case that came out of North Carolina did involve a... That was a district court case, right? Correct, Your Honor. Okay. I thought they voluntarily dismissed that below, but we'll check that. The other thing, and I'm sure Judge Wesley is probably not aware of this, but there's another panel that has this exact issue, do no harm versus FISA. Yeah. So, this exact issue that you're suggesting, that fair admission overruled our prior precedent in Guayo, is before that prior panel. Pursuant to our procedures, that panel will decide that issue, and this panel will be bound by it. Understood, and I thank you for that clarification, Your Honor. With respect to the actual merits, I think we start with the party presentation rule, and I think this case goes to an issue that's bigger than simply a formalistic application of that rule. I think every... How is this case different from the Lamont case? This case is different from the Lamont case in the sense that we don't have the district court ruling in terms of this emergency context, COVID, the whole 10 yards, etc. We have a straight-up case that, especially with Ann Codero, bookends the pandemic. She initially attempts to try to get... initiate a pistol permit. She has her permit, other than the associational claims. Her claims are moot, aren't they? She doesn't sue for damages, does she? I believe she did bring a claim for damages, Your Honor, and she also brought a claim for declaratory relief, and maybe I can parse those both out for you. With respect to the damages claim, it's our view, especially as to the due process component, that the district court sua sponte raised the defense of qualified immunity as to the due process claim. We believe there are state statutes that... Correct, Your Honor. All right, so qualified immunity was in the case. Your... her particular case, it wasn't argued, right, that it raises that with regard to your folks? That is my understanding. Chief Garcia did not raise the... We can affirm for any ground discernible in the record, correct? Consistent with... We can. So I understand your issue, but the issue of qualified immunity was raised by others and litigated in the district court, was it not? Yes, Your Honor. All right, so the issue was before the court. It's just that you're saying that as to your plaintiff, it wasn't raised as to her and litigated. But how would it factually be different in any way, shape, or form? Well, I think all three plaintiffs presented different factual scenarios. But it's a law question, isn't it? Qualified... Whether the rights are clearly established? Qualified immunity, I believe, also depends on the facts. But you've now had a chance to brief those facts before us, right? There was a case, it wasn't cited in the brief, Dean v. Blumenthal in 2009, where we said we consider whether the defendant is entitled to qualified immunity, even though this argument is put forward for the first time on appeal. So we have said that if there's a basis, even if it's raised for the first time, we can consider it, obviously giving the party a chance to brief it. But whatever, even if the facts are different as to each, we can look at the record and make that determination, right? I think under your precedence, you can. My concern, though, is under Harlow v. Fitzgerald, qualified immunity is waivable. If it's not raised, it's waived for a later portion in the proceedings. And I recognize, obviously... Wouldn't it be an odd result that we decided that the other two, the claims of qualified immunity, were legitimate and that we left this case for which there'd be no legal distinction on the same ground? Does that make any sense to you? I see the struggle as it being it doesn't make... There could be an argument that it doesn't... Putting aside the issue of waiver, why does the qualified immunity defense fail here? A number of reasons, and I'll focus both on the Second Amendment claim and the due process claim. You might want to speak up. For some reason, the microphones don't seem to be picking you up real well. I apologize. You don't have to apologize. I'm really interested to hear what you have to say, so I'll make sure I get the chance. Am I clearer now? Yell at us. All right, I'll try. I'll use my outside voice. So to Judge Chin's question, I'll focus on both the Second Amendment and the Fourteenth Amendment context. First, with respect to the Second Amendment, I think when we look at Bren... The context is there was a delay because of the pandemic. Was it clearly established that by delaying in those circumstances, they were violating someone's rights? I can't find a case on point to that, Your Honor, but I think the rules from Haller is... Particularly, initially, the governor said you can delay. We also have an argument in this case that state pronouncements aren't relevant to the qualified immunity analysis. You mentioned Haller, but the Supreme Court has never held what the standard is with respect to a delay, right? What's the standard from the Supreme Court regarding what's a sufficient delay to violate the Second Amendment? Pandemic or no pandemic? I believe they haven't, but I think the right established in Haller and Bren's reaffirmation that Haller was a methodology would... But the whole concept of qualified immunity is that a public officer operates and he or she exercises a certain amount of discretion with regard to constitutional standards. The courts aren't going to allow constitutional torts to be raised against them unless the concept is clearly established. And Bruin leads for another day. Well, let me finish. Bruin leads for another day defining whether there's a time limitation with regard to or a time implication with regard to Second Amendment rights. And that's why I think the Second Amendment claim really ties into the due process claim. I believe under Davis v. Shurer and the Roth case that state statutes can establish both liberty and property interest. Except that Connecticut takes the view with regard to its own statute that the eight weeks is advisory and not raising some kind of property right, correct? There's no controlling appellate precedent on that. So Connecticut law is unsettling? I think the statute is- The due process claim seems to be fading into the mist. The statute is clear because it uses mandatory words, the word shall. So we'd have to decide whether the statute's mandatory. We'd have to make a pronouncement on that. And then so that a public officer who doesn't have the benefit of that pronouncement somehow ends up violating a constitutional due process right, which hasn't been previously enumerated. Does that it? I think the legal canons with respect to statutory interpretation are well enough established that would have put a reasonable officer on notice. Is the issuing officer an attorney? No, not to my knowledge. I believe- I'm not sure about Chief Thode. I tend to confuse him with another individual. But I think, again, going to my point that the- and I see I'm out of time. May I answer the question? I think going to my point that given traditional canons of statutory interpretation, when an officer sees the word shall, he should probably be thinking under those- under that line of cases, I have to do this. I don't get discretion to waive it. Thank you. You have your two minutes in rebuttal. We'll hear now, I think, first from Mr. Talberg. Yes, may it please the Court. Good morning, Your Honors. My name is Jim Talberg, and I represent the Police Chief of Connecticut's capital city, that is Hartford Police Chief Jason Thode, and the Police Chief of the City of New Haven, Connecticut, Renee Dominguez. On behalf of Chief Thode and Chief Dominguez, we respectfully request that this Court affirm the decision of the District Court dismissing the plaintiff's case in its entirety, principally based on the lack of standing, and for the reasons that Your Honors have insightfully asked with your questions, especially Judge Chin. This case is really no different than the first lawsuit that the Connecticut Citizens Defense League, CCDL, filed against Governor Lamont. And I think the most persuasive authority on point is this Court's ruling in CCDL 1 in which this Court held that CCDL did not have standing and vacated the order that had entered. As correctly analyzed by the District Court, this case is really no different. The problem is CCDL can't show any injury. Injury in fact, and nor can any of its members, especially the individual plaintiffs. Well, as to their own injury, I don't know whether you're, I think it's your position they've waived any argument as to their own injury as opposed to raising this associational standing on behalf of their members. Because they do, they did allege in their complaint, I think in response to our prior decisions, that they canceled their outreach program to divert funds. So that would be a separate issue. Even if they couldn't assert standing based upon their members, they suffered some type of injury themselves, right? Wouldn't that potentially be sufficient? Judge Bianco, that's the very argument they tried in CCDL 1, which was rejected flatly by this court. Didn't they add something? That was lobbying and having to be involved in litigation. Now, I think, correct me if I'm wrong, I think that's new. The thing about canceling their outreach, that they can't do outreach anymore, was that- They're essentially the same allegations. They're quite similar, Your Honor. And that argument was rejected because as the district court properly held, and I think as this court held in CCDL 1, what CCDL does is they litigate. That's what they do. They litigate on behalf of Second Amendment rights. They didn't raise the organizational standing here, did they? Mainly they're arguing associational standing. That they weren't raising organizational standing. I think you're correct, Your Honor. I believe, Judge Wesley, that they are primarily- I'll go back and look, but my recollection is that the only thing that they were arguing here was associational standing. I believe you're correct, Your Honor. I'll certainly ask and rebuttal your opponent. And again, I think the problem is the same, whether it's associational or organizational. I'm on do no harm, too. The problem is that we're standing against the wind. Every other circuit that's decided this associational standing has gone the other way. And in Worth v. Selden, a case that I remember quite well because I was a law student when that was litigated in the District Court of Rochester, the Supreme Court took kind of a dim view of Judge Hayes' opinion of the Second Circuit with regard to the standing issue. So, I mean, the Second Circuit's position is not without its critics on associational standing, wouldn't you say? Well, fair point. I don't mean to date you. I mean, Worth is going back to 1975. And in that case, it was a dismissal. There was no organizational standing found in that case. I'm very familiar with the case. Yeah. But in any event, even with associational standing, the organization would still need to show that a member had an actual injury in fact. And that's the real problem here. There was a time where the fingerprinting for firearms permits was delayed because of COVID. We're past that. That all cleared out.  Absolutely, Your Honor. Even assuming the criticisms of the Second Circuit case law are fair, there still isn't standing because none of the individuals have standing. I don't know why we're here because the issue has been resolved. Government damages for the delay? Again, that goes back to- Second Amendment right, right? Yeah, I guess we have to look at standing for equitable claims and then standing for damages. There might be standing for damages. Well, there may have been, depending on the particular facts and circumstances of each individual plaintiff. And that's where the district court was correct in applying qualified immunity. But you would argue qualified immunity anyway as to the damages claim. For the reasons that Your Honor's noted, it was not clearly established. There was not a precise deadline. Could it be six months to get a permit or eight months? There's no law that says that's impermissible and results in a constitutional injury. I see that my time is finished. Unless Your Honors have any additional questions, we respectfully request that the district court's ruling be affirmed. All right, thank you. Thank you. We'll now hear from your colleague, Mr. Rigat? Rigat. Rigat. And good morning, Your Honors. I simply stated I think the case comes down to two things, mootness and qualified immunity. No member of the CCDL has a justiciable case anymore. COVID's over. I'll call them the representative plaintiffs that were brought in this case. They've gotten their gun permits. And associational standing, even if it is allowed for 1983 claims, still requires, and this goes back to Worth, still requires justiciability. And so I believe firmly that the case has been mooted by the end of COVID and the fact that everybody seems to have received their pistol permit. I thought they were also seeking economic damages. Am I wrong about that? Monetary damages. Right, but see, that now dovetails back into qualified immunity. So the case, that means it's not moot. Qualified immunity means that part of their case is not moot. If they're seeking monetary damages, that's still live. So the mootness covers any type of injunctive. Right, but I, okay. As Chen was pointing out. But the monetary claims are not moot. You're not arguing the monetary claims are moot, right? I think the, oh, I see what you're saying. Okay, yes. But they can't bring monetary claims under 1983, associationally, and I think that's. Individuals. Individuals can, but not CCDL. So I guess for purposes of the associational standing, I think that is completely off the table now due to mootness. In terms of economic damages that might otherwise be permitted because, well, there was this unlawful delay in getting my permit, that's where the qualified immunity comes in. That's, okay, not mootness, but that's under the doctrine of qualified immunity. And I think there, you know, we have three things going on. We have COVID, which is unprecedented. How do you deal with that? I don't think it's unreasonable to take people in one at a time. And, you know, remember what part of Judge Williams' decision he points out, that we're dealing with COVID and we're also dealing with an increase in permit applications. Also, there was a spike in permit applications both at the same time. And so it's not unreasonable to, that it's going to take longer to issue pistol permits. That's just a reality that has nothing to do with, I don't think you can infer from that, that people are slow walking pistol permits because they don't like the Second Amendment. Moreover, and I know Judge Williams, frankly, it stung a little bit. I did bring in the Garcia motions at the trial level. But, you know, they're never prior to Bruin. There was no clear cut decision indicating that you had a right to a carry permit. You know, Heller and McDonald were very clear on that point that this is about, you have a right to a gun in the home, maybe. I mean, I can understand the argument and certainly it broke that way when Bruin was decided. But, frankly, also the fact is that there's no standard as to what is a timely, you know, there's no rule, there's no clear indication to chiefs of police how fast you have to do this. And I don't know if this is the case. I don't know if this is an issue that the federal judicial branch wants to tell a state executive agency and get itself involved in fingerprinting. It just doesn't seem, you know, but moreover, for purposes of qualified immunity, there's no guidance, there's no court guidance on the issue. And so I think the economic damages are gone. So I appreciate everyone's time. Thank you. Okay, Mr. Atkinson, you have two minutes. Thank you, Your Honor. I want to get to what I think is we're defining in the district court, define the qualified immunity issue. Before you get to that, I do want to clarify the issue, whether or not the organization is asserting standing on its own. Candidly, we didn't raise that on appeal, Your Honor. We raised it to trial court, not on appeal. Thank you for your frankness, Mr. Atkinson. I appreciate it. Thank you. No problem, Your Honor. With respect to the Second Amendment, the qualified immunity issue, how you go and get a gun in Connecticut for home defense, the right established in Heller, is you either need a pistol eligibility certificate or you need a pistol permit, the so-called carry permit. Without either of those two, you cannot go to a gun dealer in Connecticut and buy a firearm for home defense. What happened in the two-and-a-half-year delay for Ms. Cordero, the seven-month delay for Ms. Williams, the seven-month delay for Mr. Johnson was a complete deprivation of the Heller right because it could not be exercised unless they were fingerprinted for either the certificate or the pistol permit. With respect to mootness, I will end the standing discussion. I will note that we did assert a claim for a request for declaratory relief, and I understand I'm up against a tall task because it's an abuse of discretion review, but we're talking qualified immunity today. We have the Elrod v. Burns case that says the denial of a constitutional right results in irreparable harm. The federal courts need to resolve this issue or it's just going to keep repeating itself. Thank you, Your Honors. I'll arrest. Thank you, Mr. Atkinson. Thank you, everyone. We'll reserve decision. Have a good day.